# In the United States Court of Federal Claims

No. 21-1490
(Filed Under Seal: February 13, 2023)
(Reissued for Publication: February 28, 2023)[1]

***********************************
\*
IXI TECHNOLOGY ELECTRONIC      \*
WARFARE, LLC, dba, IXI EW,      \*
     \*
     Plaintiff,      \*      RCFC 12(b)(1); Motion to Dismiss; Lack
     \*      of Subject-Matter Jurisdiction; RCFC
     \*      12(b)(6); Failure to State a Claim; RCFC
     v.      \*      52; Motion for Judgment on the
     \*      Administrative Record; Bid Protest
THE UNITED STATES,      \*      Standing; Bad Faith; 5 U.S.C. § 706(2)(A).
     \*
     Defendant.      \*
***********************************

*Todd John Canni*, Pillsbury Winthrop Shaw Pittman, LLP, Los Angeles, CA, counsel for Plaintiff.

*Amanda L. Tantum*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

## OPINION AND ORDER

**DIETZ, Judge.**

Plaintiff, IXI Technology Electronic Warfare, LLC ("IXI"), protests a decision by the United States Department of the Navy ("Navy") to cancel a Small Business Technology Transfer ("STTR") Broad Agency Announcement ("BAA" or "solicitation") soliciting research and development of radar technology after IXI protested the Navy's proposal evaluation and award decision. IXI contends that the Navy cancelled the solicitation not because it no longer needed the technology but because IXI pointed out flaws in the Navy's proposal evaluation and award decision.

The government moves to dismiss IXI's second amended complaint for lack of standing pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") arguing that IXI does not possess a direct economic interest. The government also moves to dismiss IXI's second amended complaint for failure to state a claim of bad faith pursuant to RCFC 12(b)(6). Additionally, the government argues that IXI is not entitled to relief on the merits because the Navy's cancellation decision was rational. Finally, the government moves to

---

[1] This Opinion and Order is filed under seal in accordance with the Protective Order entered on June 24, 2021. *See* [ECF 9]. The parties were given an opportunity to identify protected information. The parties filed a joint status report on February 23, 2023, with unopposed redactions proposed by the government. [ECF 64]. The Court accepts all proposed redactions and has replaced the protected information with the following placeholder: "[…]".

strike extra-record evidence referenced by IXI in support of its motion for judgment on the administrative record.

For the reasons below, the Court finds that IXI has standing to bring its protest and that IXI has adequately stated claims for relief. However, the Court also finds that the Navy had a rational basis for its decision to cancel the solicitation. Therefore, the government's motions to dismiss pursuant to RCFC 12(b)(1) and RCFC 12(b)(6) are **DENIED**, the government's cross-motion for judgment on the administrative record is **GRANTED**, and IXI's motion for judgment on the administrative record is **DENIED**. Further, the Court **FINDS AS MOOT** the government's motion to strike the extra-record materials referenced by IXI because the Court disregarded such materials in reaching its decision on the merits.

I.     **FACTUAL BACKGROUND**

IXI is a "service-disabled veteran-owned small business located in Yorba Linda, California." Sec. Am. Compl. [ECF 24] ¶ 34. It specializes in the development of naval tactical data systems technology for use by military customers and defense contractors worldwide, including the manufacture of a counter-UAS device. *Id.*

A.           **Overview of the Solicitation and Evaluation Factors**

On December 8, 2020, the Navy issued a BAA under the STTR program. AR 266-311.[2] The BAA solicited proposals from small business firms and research institutions to conduct research and development in various defense-related topic areas. AR 4. The STTR program consists of three phases;[3] the December 8, 2020, solicitation was limited to Phase I proposals. *Id.* The BAA provides that the purpose of Phase I is to determine "the scientific, technical, and commercial merit and feasibility of ideas[.]" AR 272. Phase I awards would be made in accordance with the SBA Policy Directive guidelines applicable to the STTR program.[4] *Id.* Any Phase I proposals selected for award would "be funded under negotiated contracts or purchase orders[.]" AR 283.

---

[2] The government filed two administrative records in this case—one pertaining to IXI's initial protest, which the government corrected, and one pertaining to IXI's protest of the cancellation decision. *See* [ECFs 11, 13-1, 28]. The Court cites to the first administrative record at [ECFs 11, 13-1] as "AR ___." The Court cites to the second administrative record at [ECF 28] as "AR-C ___."

[3] The STTR program has three phases. 15 U.S.C. § 638(e)(6); *see* AR 169-77. Phase I is for determining, "to the extent possible, the scientific, technical, and commercial merit and feasibility of ideas submitted pursuant to STTR program solicitations." *Id.*

[4] The BAA incorporated the SBA Policy Directive effective May 2, 2019. AR 272. The purpose of the policy directive is "to provide guidance to the participating Federal agencies for the general operation of the . . . STTR program[]." Small Business Innovation Research Program Policy Directive, 84 Fed. Reg. 12,794, 12,806 (May 2, 2019). The Policy Directive sets forth the phased structure of the STTR program for soliciting proposals and awarding funding agreements, *id.* 12,810-12, the solicitation process, *id.* at 12,812-13, eligibility and proposal requirements, *id.* at 12,813-15, and the terms of the funding agreement resulting from an STTR award, *id.* at 12,815-17.

IXI's proposal sought an award under Topic N21A-T018, "Airborne Radar-Based Detection and Discrimination of Small Unmanned Aerial Systems and Birds for Collision Avoidance and Force Protection." AR 219, 1006. The topic "was generated by the Office of Naval Research [("ONR)"], Code 31 - Information, Cyber and Spectrum Superiority which is responsible for coordinating Science and Technology (S&T) and Research and Development (R&D) efforts in mathematics, electronics, computer & information sciences and their applications in command & control, communications, cyber, electronic warfare, intelligence, surveillance and reconnaissance." AR-C 31. Thomas J. Kreppel, a Program Officer with the ONR ("Program Officer"), was responsible for the topic. *Id.*

The topic's "primary sponsor was Program Management Office (PMA) 262 [("PMA-262")], Persistent Maritime Unmanned Aircraft Systems Program." AR-C 32. In June 2020, when the topic was written, PMA-262 "was pursuing the development of an organic radar-based sense and avoid [("SAA")] capability for non-cooperative aircraft collision avoidance," to assist the MQ-4C Triton drone. AR-C at 31. Topic N21A-T018 was "written to address a low-altitude threat that Naval unmanned platforms faced at takeoff, climb out, and approach to landing." *Id.*

The overall objective for Topic N21A-T018 was to "[d]evelop and demonstrate advanced airborne radar modes for the detection and discrimination of small Unmanned Aerial Systems [("sUAS")] and birds," AR 219. For Phase I of the topic, the specific objective was as follows:

> Identify candidate radar mode designs for conceptual radar systems representative of the Navy radar systems listed in the Description. Explore innovative approaches to maximize capability from various radar architectures through comprehensive analysis with no requirement for Navy-specific radar design information. Provide a detailed detection and discrimination algorithm description and analysis as implemented on the range of conceptual radar systems. The analyses should be sufficiently comprehensive so as to inform operational feasibility and the Phase II focus. Develop a Phase II plan.

*Id.* Regarding the evaluation of Phase I proposals, the BAA provided as follows:

> All Phase I . . . proposals will be evaluated and judged on a competitive basis. Proposals will be initially screened to determine responsiveness. Proposals passing this initial screening will be technically evaluated by engineers or scientists to determine the most promising technical and scientific approaches. Each proposal will be judged on its own merit. DoD is under no obligation to fund any proposal or any specific number of proposals in a given topic. It also may elect to fund several or none of the proposed approaches to the same topic.

AR 282. It further provided that "[s]elections will be based on best value to the Government considering the following factors which are listed in descending order of importance: [Criteria

A.] [t]he soundness, technical merit, and innovation of the proposed approach and its incremental progress toward topic or subtopic solution[,] [Criteria B.] [t]he qualifications of the proposed principal/key investigators, supporting staff, and consultants . . . , [Criteria C.] [t]he potential for commercial (Government or private sector) application and the benefits expected to accrue from this commercialization." AR 294-95. In addition, the BAA stated: "Cost or budget data submitted with the proposal will be considered during evaluation." AR 295.

Under the BAA's "Phase I Proposal Submission Requirements," the government instructed offerors to submit: a proposal cover sheet; a technical proposal responsive to the three evaluation criteria; a cost volume that may not exceed $140,000 for the Phase I Base amount and $100,000 for the Phase I Option amount; a Company Commercialization Report ("CCR"); documents to support the technical and cost volume; and a fraud, waste and abuse training certification. AR 169-71. Regarding the submission of the CCRs, the government informed offerors that the "DoD requires . . . submission [of CCRs] to the 21.A Phase I BAA." AR 170. The government further warned offerors that proposals would be rejected for noncompliance with the submission requirements. AR 169.

The Navy instructed the evaluators that the BAA involved a "competitive source selection process." AR 1086. In addition, it instructed them to evaluate proposals and assign one of the following qualitative ratings for each of the three criteria:

| Qualitative Rating | Description |
| --- | --- |
| Outstanding (O) | Proposal **significantly exceeds** requirements in a way that benefits the government or meets requirements and contains at least one exceptional enhancing feature which benefits the government. Any **weakness is minor**. |
| Highly Satisfactory (HS) | Proposal **exceeds requirements** in a way that benefits the government or **meets requirements** and contains enhancing features which benefit the government. Any **weakness is minor**. |
| Satisfactory (S) | Proposal **meets requirements**. Any **weaknesses are acceptable** to the government. |
| Marginal (M) | Proposal **contains weaknesses** or minor deficiencies which **could have some impact** if accepted. |
| Unsatisfactory (U) | Proposal **does not comply substantially** with requirements. |

AR 1099 (emphasis in original).[5] For Phase I awards, the evaluation tip for the technical point of contact stated that "typically 2-4 Phase I awards per topic [were] funded." AR 1098.

B.        The Evaluation and Award Decision

---

[5] This information was contained in a PowerPoint presentation used to train the proposal evaluators. *See* AR 1099.

IXI submitted its proposal on February 11, 2021. *See* AR 1006-40. Seventeen other contractors also submitted proposals. AR 348-1005, 1041-1079. The Navy evaluated each of the proposals it received under the three evaluation criteria contained in the BAA and assigned consensus adjectival ratings to each proposal. AR 1122-1229. IXI received the following assessment:

| Criteria | Strength | Weakness | Score |
|---|---|---|---|
| A. | The flow of the proposed tasks from signal enhancement, extraction and integration into host radars is an acceptable process. | Neither the micro-Doppler signal enhanc[e]ment or the extraction and exploitation process is adequately justified. The approach lacks sufficient timeline considerations on the host radar systems. | Satisfactory |
| B. | Team members have related experi[e]nce in radar, signal processing and hardware systems. | The cited relevant work is only tangentially related to the focus of this topic and therefore doesn't provided a strong leveraging opportunity. | Satisfactory |
| C. | A number of candidate transition opportunities are cited and partnering strategies to facilit[at]e the commercialization of this technology. | The plan lacks sufficient detail on how the technology will be positioned to maximize the Trans[i]tion potential to any of the cited systems. | Satisfactory |

AR 1224-25.[6] The evaluators then provided the following "Nomination Summary" of IXI's proposal:

> The overall task flow of IXI Technology Electronic Warfare's proposal is acceptable. However, neither the micro-Doppler signal enhanc[e]ment or the extraction and exploitation process is adequately justified. The skills of the technical team are adequate to address the prop[o]sed tasks and the commercialization plan is acceptable. As a result of the technical proposal weaknesses, IXI Technology Electronic Warfare is not recommended for a phase I award.

AR 1225. On April 7, 2021, the Navy decided to select the proposals submitted by [. . .] and […] for award. AR 1236. The Navy debriefed IXI on June 17, 2021. AR 1249.

---

[6] Information in this table is derived from the Proposal Evaluation Form for IXI. *See* AR 1224-25.

C.          **Initial Protest, Subsequent Government Actions, and Procedural History**

IXI filed its first complaint in this Court on June 21, 2021, seeking declaratory and injunctive relief. *See* Compl. [ECF 1] ¶¶ 97-103. IXI alleged that the Navy: misevaluated IXI's proposal; failed to evaluate cost data submitted with the proposals; failed to utilize multiple technical reviewers; misevaluated awardee […]'s proposal; and failed to conduct a proper best value trade-off. *Id.* ¶¶ 58-96. On June 28, 2021, the government filed the administrative record relating to the Navy's proposal evaluation and selection decision. Admin. R. [ECF 11]. On July 6, 2021, IXI notified the government that the administrative record was missing various documents, including a copy of the CCR filed by offeror […] with its proposal. Exs. To Pl.'s Sec. Am. Compl. [ECF 24-1] at 3-4.[7][8] The government responded on July 8, 2021, stating that although it believed that the administrative record had been properly created, it would nevertheless correct the record to include additional documents. *Id.* at 6-7. The government further indicated, in response to IXI's inquiry about […]'s CCR, that it had reached out to the Navy for more information. *Id.* at 7. The government also stated that "cost evaluations were performed only for the offerors selected for funding following technical evaluations." *Id.* Finally, the government stated that "evaluations related to the best value analysis" were already included in the administrative record. *Id.*

On July 9, 2021, again in response to an inquiry from IXI, the government indicated that the Navy employee with information about the missing CCR report was on vacation. [ECF 24-1] at 11. That same day, the government moved to file corrections to the administrative record. Def.'s Mot. to Correct Admin. R. [ECF 13] at 1. On July 13, 2021, responding once more to an inquiry from IXI, the government stated that it had included […]'s entire proposal in the administrative record. [ECF 24-1] at 15. Confused by the fact that […]'s proposal did not include a CCR, on July 13, 2021, IXI again sought clarification from the government. *Id.* at 17.

On July 14, 2021, the government notified IXI that the "[t]he agency [was] contemplating taking corrective action." [ECF 24-1] at 18. The next day, July 15, 2021, Judith A. Dastis, the Contracting Officer ("CO") on the BAA, authored a "Memorandum For File." AR-C 30. The stated purpose of the memorandum was "to document the recommendation of the undersigned that it is in the Government's best interest to pursue corrective action" in response to IXI's protest. *Id.* The CO then added the following:

> 5.      Based upon the allegations raised by IXI, review of the BAA/Navy Instructions and official contract file, and discussions with all stakeholders, it is my independent assessment and recommendation that corrective action be

---

[7] All page numbers in the parties' briefings refer to the page number generated by the CM/ECF system.

[8] The Court cites to attachments provided by IXI with its second amended complaint for the purpose of the factual background only. As explained in footnote 11, because the Court previously denied IXI's request to supplement or complete the administrative record with some of these materials, *see IXI Tech.*, 2021 WL 6054927, and further because the Court does not need these extra-record materials to reach its decision on the merits, the Court otherwise disregarded these materials.

taken to review the solicitation, reexamine the technology, and take any action deemed appropriate by the agency, which may include a reevaluation of proposals or cancellation of the STTR Topic.

6.      The Agency is exploring pertinent updates in technology and is awaiting documentation from the ONR STTR Program Office regarding possible updates to the subject STTR Topic.

*Id.* ¶¶ 5, 6.

Thereafter, on July 16, 2021, IXI filed an amended complaint and motion for judgment on the administrative record. Am. Compl. [ECF 18]; Pl.'s Mot. for J. on the Admin. R. [ECF 20]. In its amended complaint, IXI alleged the Navy: misevaluated awardee […]'s proposal; misevaluated awardee […]'s proposal; failed to evaluate awardees' CCRs; failed to conduct a best value trade-off; failed to evaluate awardees' cost proposals during the evaluation period; and misevaluated IXI's proposal. [ECF 18] ¶¶ 44-115. That same day, the government filed a motion to stay briefing on the cross-motions for judgment on the administrative record because it was considering taking corrective action. Def.'s Mot. to Stay [ECF 19] at 1.

On July 20, 2021, the Program Officer authored a document titled "Cancellation of Topic N21A-T018," stating the following:

Topic N21A-T018 - Airborne Radar-Based Detection and Discrimination of Small Unmanned Aerial Systems and Birds for Collision Avoidance and Force Protection - was originally written to address a low altitude threat that Naval unmanned platforms faced at takeoff, climb out, and approach to landing. The primary transition target for this work was Program Management Office Air 262 (PMA-262), Persistent Maritime Unmanned Aircraft Systems Program. At the time the topic was written (June 2020), PMA-262 was pursuing the development of an organic radar-based sense and avoid capability for non-cooperative aircraft collision avoidance. This same radar would have been the transition focus of this Small Business Technology Transfer (STTR) project addressing small Unmanned Aircraft Systems (sUAS) and bird Detection . . . [.] However, PMA-262 recently canceled this radar development, believing that a radar, such as this, is not necessary to operate safely in national and international airspace. A combination of cooperative sensor systems, certificates of authorization, due regard alternate means of compliance and strategic avoidance has been deemed sufficient to provide safe operation. The inclusion of a radar-based collision avoidance system was assessed to not appreciably increase overall safety. Furthermore[,] the safety threat from sUAS and birds

was not sufficient to warrant a radar system in the absence of an existing suitable one.

Therefore, it is in the Navy's best interest to cancel topic N21A-T018 which was part of the Department of Defense SBIR/STTR Solicitation 21.1/A which closed 4 MAR 2021. No awards were made on this topic and no further are deemed necessary.

AR-C 31.

The next day, July 21, 2021, the CO authored another "Memorandum for File." AR-C 32. Therein, she explained that the "[d]evelopment of a new radar system was deemed unnecessary due to the diminished perceived threat and the ability of existing systems to provide a safe operating environment," and that "[i]t is [the] determination of the Office of Naval Research that it is in the best interest of the Navy to cancel this topic." *Id.* That same day, the government filed a notice of cancellation of the solicitation on the docket, stating that "after reviewing the technology and its current needs, the United States Department of the Navy . . . has decided that the current solicitation . . . does not meet its needs." Def.'s Notice of Cancellation [ECF 21] at 1. The government further stated its belief that "this will moot the protest." *Id.* On July 22, 2021, the CO notified both […] and […] by letter that despite having previously selected their "STTR Phase I proposal[s] under Topic #N21AT018" for award, because the "topic's primary sponsor recently decided to cancel the development of the radar system [] which this topic's research would have supported, . . . no awards [would] be made under this topic." AR-C 34-35.

On August 6, 2021, with the Court's permission, IXI filed its second amended complaint. Therein, IXI alleged the following: that the Navy's cancellation was arbitrary, capricious, improper, and unsupported; and that the Navy's evaluation of proposals and award decisions was arbitrary, capricious, and contrary to law. *See* [ECF 24] ¶¶ 134-48. The government filed an administrative record relating to the Navy's cancellation decision on September 3, 2021. Admin. R. [ECF 28].

On September 10, 2021, IXI filed a motion to complete and supplement the administrative record with additional documents relating to the government's cancellation decision. *See* Pl.'s Mot. to Complete and Suppl. the Admin. R. [ECF 30]. Following a status conference, the Court ordered the government to submit the responsive documents to the Court for in camera review. *See* Order [ECF 40]. Upon reviewing the documents, the Court concluded that completion of the administrative record with agency communications and documents relating to the Navy's decision to cancel the solicitation was not warranted because the excluded materials did not further explain the Navy's cancellation decision or decision-making process beyond what was already set forth in the administrative record. *See IXI Tech. Elec. Warfare, LLC v. United States*, 21-1490, 2021 WL 6054927 (Fed. Cl. Dec. 3, 2021). Further, with respect to IXI's challenge based on the timing of the cancellation decision, the Court held that "the timing of the decision is ascertainable from the agency-assembled record." *Id.* at *4. The Court also held that the government appropriately excluded certain materials from the administrative record based on the attorney-client and deliberative process privileges. *Id.* Regarding supplementation of the administrative record with certain communications between counsel for IXI and the

government, the Court concluded that these documents were appropriately excluded from the record because they were neither before the agency decision-makers, nor part of the agency decision-making process. *Id.* at *5. The Court further found that although IXI presumably sought to include these communications in the administrative record to establish the timeline of IXI's identification of the alleged deficiencies in the record, the Navy's contemplation of corrective action, and the Navy's cancellation decision, this information was already reflected in the docket and the record. *Id.*

The government filed its motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6) on January 18, 2022. [ECF 49]. IXI filed its response to the motion to dismiss and motion for judgment on the administrative record on February 1, 2022. [ECF 50]. The government filed its motion to strike the extra-record materials contained in IXI's motion for judgment on the administrative record on February 8, 2022. [ECF 51]. IXI filed its response to the government's motion to strike on February 22, 2022, and the government replied on March 1, 2022, [ECFs 52, 53]. The government filed its reply in support of its motion to dismiss and its cross motion for judgment on the administrative record on March 7, 2022. [ECF 56]. The Court held oral argument on April 8, 2022. *See* [ECF 57].

## II.    JURISDICTION

Except in its motion to dismiss IXI's complaint for lack of standing pursuant to RCFC 12(b)(1), which the Court addresses below, the government does not challenge the Court's jurisdiction over IXI's complaint. Nonetheless, the Court "has an obligation to satisfy itself that jurisdiction is proper[.]" *L-3 Commc'ns. Corp. v. United States*, 99 Fed. Cl. 283, 288 (2011) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 130 (2010)). The Tucker Act, as amended by the Administrative Dispute Resolution Act, provides this Court with "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or to the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process[,]" including "objections to a proposed award, objections to an award, and objections related to a statutory or regulatory violation so long as these objections are in connection with a procurement or proposed procurement." *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012). This Court's jurisdiction also extends to a challenge to the cancellation of a solicitation by the government. *See MORI Assoc., Inc. v. United States*, 102 Fed. Cl. 503, 524. (2011) (holding that the government's arbitrary cancellation of a solicitation would be a violation of regulation in connection with a procurement); *see also Tolliver Grp., Inc. v. United States*, 151 Fed. Cl. 70, 85 (2020).

In its second amended complaint, IXI challenges the Navy's decision to cancel the BAA as arbitrary, capricious, improper, and unsupported by the administrative record. *See* [ECF 24] ¶ 139. Additionally, IXI challenges the Navy's evaluation of the proposals and award decisions in connection with the BAA. *See id.* ¶¶ 141-47. Upon a review of IXI's complaint and the administrative record, the Court finds that IXI's challenges fall within this Court's jurisdiction under the Tucker Act. *See Squire Sols., Inc. v. United States*, 156 Fed. Cl. 249, 265 (2021)

(holding that a disappointed offeror's challenge to the government's decision under an SBIR research and development topic solicited under a BAA is "in connection with a procurement" for jurisdictional purposes).

## III.   THE GOVERNMENT'S MOTION TO DISMISS

The government moves to dismiss IXI's second amended complaint under RCFC 12(b)(1) for lack of standing and under RCFC 12(b)(6) for failure to state a claim. [ECF 49] at 16-18. The Court considers each motion in turn.

### A.        The Government's RCFC 12(b)(1) Argument

The government argues that the Court should dismiss IXI's complaint "for lack of jurisdiction because IXI has not demonstrated that it had a 'direct economic interest' in the awards of funding and, thus, that it has standing to pursue its claims." [ECF 49] at 18. Further, the government argues that even if the Navy erred in its evaluation and selection of proposals, and in its cancellation of the solicitation, IXI cannot demonstrate that it had a substantial chance of being selected for an award absent the erroneous evaluations or that it was prejudiced by the alleged erroneous evaluations because the Navy was not obligated to make any awards. *Id*. at 21-26. Lastly, the government argues that IXI does not have a substantial chance of being selected for award because other offerors received better ratings than IXI yet were similarly not selected for an award. *Id*. at 27-28.

A motion to dismiss for lack of standing pursuant to RCFC 12(b)(1) questions whether the court has jurisdiction to adjudicate the merits of the underlying dispute. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); RCFC 12(b)(1). Before reaching the merits, the Court must first determine whether the protestor has standing to challenge the agency's award decision. *Orbital Maint. & Constr. Co. v. United States*, 145 Fed. Cl. 71, 74 (2019); *see Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (highlighting that "standing is a threshold jurisdictional issue"). The Court determines a party's standing as of the time it filed suit. *Indus. for the Blind, Inc. v. United States*, 120 Fed. Cl. 132, 135 (2015) (citing *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003)). Further, "[f]or the limited purpose of determining whether it has standing, a protestor's allegations are assumed to be true." *Blue Origin Fed'n, LLC v. United States*, 157 Fed. Cl. 74, 89 (2021). Thus, when assessing a protestor's standing, the Court will "presume the party bringing a bid protest will succeed on the merits of its claim and ask whether it has alleged an injury (or prejudice) caused by the procuring agency's actions." *Am. Relocation Connections, L.L.C. v. United States*, 789 F. App'x 221, 226 (Fed. Cir. 2019).

A protestor must show that it meets the standing requirements under § 1491(b)(1) of the Tucker Act, which are "more stringent" than the standing requirements imposed by Article III of the United States Constitution. *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017). To meet §1491(b)(1)'s standing requirements, a protestor must make two separate showings—that it is an interested party and that it was prejudiced by a significant error in the procurement process. *Id.* To satisfy the interested party requirement, a protester must show that it is an actual or prospective bidder who possesses the requisite direct economic interest. *Weeks Marine, Inc. v.*

*United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009); *accord Squire Sols.,* 156 Fed. Cl. at 265. A protestor has a direct economic interest if it shows that it had a substantial chance of winning the contract. *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358-59 (Fed. Cir. 2018). To meet the prejudice requirement, a protestor must establish that, but for the alleged procurement error, it would have had a substantial chance of receiving the contract award. *Diaz*, 853 F.3d at 1358; *see Info. Tech. & Applications v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (highlighting that the "prejudice issue must be reached before addressing the merits"). Additionally, "[d]espite the potential relevance of prejudice in determining substantial chance, direct economic interest should still be evaluated separately from prejudice." *Veteran Shredding, LLC v. United States*, 140 Fed. Cl. 759, 765 (2018) (quoting *CliniComp Int'l*, 904 F.3d at 1358-59); *Universal Marine Co. K.S.C. v. United States*, 120 Fed. Cl. 240, 248 (2015) ("[A] proper standing inquiry must not conflate the requirement of 'direct economic interest' with prejudicial error." (citing *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1380 (Fed. Cir. 2009))).

The Court finds that IXI has standing to protest the Navy's cancellation decision. It is undisputed that IXI was an actual offeror, so the issue of standing turns on whether IXI has demonstrated that it has a direct economic interest in the Navy's award or failure to award a contract under the solicitation and whether IXI was prejudiced by the Navy's alleged errors. In its second amended complaint, IXI challenges the Navy's cancellation of the solicitation, arguing that it was arbitrary, capricious, improper, and unsupported. [ECF 24] ¶¶ 134-39. IXI also challenges the Navy's evaluation of the proposals submitted under the solicitation and its decision to select the proposals submitted by […] and […] for award. *Id*. ¶¶ 140-48. Based on a limited review of IXI's allegations, the Court finds that IXI has sufficiently alleged facts that, if proven, demonstrate the requisite prejudice for standing purposes. *See Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 530 n.12 (2010) ("[B]efore reaching the merits of the parties' dispute, the court conducts only a 'limited review' of the plaintiff[']s allegations and the administrative record for the 'minimum requisite evidence necessary for plaintiff to demonstrate prejudice and therefore standing." (quoting *Night Vision Corp. v. United States*, 68 Fed. Cl. 368, 392 n.23 (2005))).

IXI submitted a timely, qualifying proposal. [ECF 24] ¶¶ 38, 49. The Navy evaluated IXI's proposal and assigned it "Satisfactory" ratings for each evaluation factor with one weakness under each factor. AR 1224-25. Ultimately, the Navy did not select IXI's proposal for award and instead selected proposals submitted by […] and […]. [ECF 24] ¶ 64. The Navy assigned […]'s proposal ratings of "Outstanding," "Outstanding," and "Highly Satisfactory" for the evaluation factors with one weakness under one of the evaluation factors. AR 1221-22. The Navy assigned […]'s proposal ratings of "Highly Satisfactory," "Satisfactory," and "Satisfactory" for the evaluation factors with one weakness under each evaluation factor. AR 1218-19. IXI asserts, *inter alia*, that the Navy's evaluation of its proposal was arbitrary and alleges that its proposal should have received zero weaknesses and, at a minimum, "Highly Satisfactory" ratings for each of the evaluation factors. [ECF 24] ¶¶ 110, 121, 132. Additionally, IXI challenges the Navy's selection of […]'s and […]'s proposals, alleging that they should have been rejected for failure to comply with solicitation requirements. *Id.* ¶¶ 68-70, 78-79, 84-87. IXI also asserts that the Navy failed to conduct a best-value analysis, as required by the solicitation. *Id.* ¶¶ 88-91. Based on the required presumption that IXI will succeed in its challenges, the Court finds that IXI would have a substantial chance in receiving an award because of its "Highly

Satisfactory" ratings and the Navy's rejection of […]'s and […]'s proposals. *See Info. Tech.*, 316 F.3d at 1319 (finding that a disappointed offeror's chances of securing the contract would have increased absent the alleged errors); *see also WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 263 (2021).

The Navy's decision to cancel the solicitation also prejudiced IXI, despite IXI's status as a non-awardee. Unlike IXI, an awardee or presumptive awardee has a clearer path to demonstrate the requisite prejudice in a protest challenging an agency's cancellation decision because an awardee or presumptive awardee may argue that, but for the cancellation, it would have been awarded the contract. IXI's status is also different from that of a non-awardee who chooses not to challenge the agency's proposal evaluation and selection decision. In that case, it would be difficult for the non-awardee to demonstrate prejudice resulting from an allegedly arbitrary cancellation because it has no apparent interest in the solicitation and whether the agency awards or fails to award a contract under the solicitation. Here, IXI—a non-awardee—not only submitted a qualified offer and was not selected for award, but IXI also challenged the agency's proposal evaluation and selection decision. Thus, IXI can demonstrate the requisite prejudice stemming from the cancellation decision because, if it were to succeed in its challenges to the Navy's cancellation decision *and* proposal evaluation and selection decision, it would still be a qualified offeror under the solicitation pursuing an award from the Navy in any subsequent re-evaluation conducted by the Navy. *See Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673, 679-80 (2009) (stating that a protestor's success on a claim challenging an agency's cancellation decision can restore the *status quo ante* the cancellation decision); *see also Turner Const. Co., Inc. v. United States*, 94 Fed. Cl. 586, 594 (2010).

Of course, even if IXI succeeds, the Navy may again decide to cancel the solicitation or, it may proceed with the solicitation and again decide not to select IXI's proposal for an award. Nevertheless, for the purpose of establishing standing, IXI need not demonstrate that its proposal would have ultimately been selected for award absent the alleged errors by the Navy, only that it would have had a "greater than an insubstantial chance of securing the contract." *See Info. Tech.*, 316 F.3d at 1319; *Veteran Tech. Integrators, LLC v. United States*, 143 Fed. Cl. 794, 800 (2019) (citing *Myers*, 275 F.3d at 1370-71) ("[W]hile a plaintiff need not show that it would have received the award in a competition, a plaintiff must show that it would have been a qualified bidder or offeror to establish standing."). IXI has met this threshold.

The Court reaches this conclusion despite the government's argument that IXI cannot establish that it is an interested party because the government was under no obligation to make an award under the solicitation. *See* [ECF 49] at 23-24. According to the government, because the evaluators never ranked the proposals, even if […]'s and […]'s proposals were deemed non-compliant, IXI cannot demonstrate that it would have been next in line for selection. *Id.* In the government's view, the process, albeit a "competitive" one, was not a "comparative" one. *Id.* at 24. In support of its position, the government cites *Octo Consulting*, a case in which the court held that plaintiff failed to establish prejudice because, "[e]ven if the court accepted [plaintiff's] argument as true, the [Request for Quotation] did not require [the government] to choose a specific number of awardees." 124 Fed. Cl. at 468.

The Court is not persuaded. While the Navy's evaluation process may not have included a direct comparison or ranking of the proposals, it is clear from the terms of the solicitation that the Navy was required to determine which proposals constituted the "best value" to the Navy and that the Navy's selection of proposals was to be based on a competition. Further, as noted above, to determine a party's standing, IXI need not prove that its proposal *would* have been selected for an award absent the alleged errors. *See Blue Origin Fed'n, LLC*, 157 Fed. Cl. at 89; *Tele-Consultants, Inc. v. United States*, 142 Fed. Cl. 686, 693 (2019). In a re-evaluation, the prospect that IXI's proposal would be selected for award would be greater. *See Info. Tech.*, 316 F.3d at 1319*; see also Wisconsin Physicians Serv. Ins. Corp. v. United States*, 151 Fed. Cl. 22, 32 (2020). If the Court were to adopt the government's reasoning, that would mean that disappointed bidders would never meet § 1491(b)(1)'s standing requirements in cases where the government was not required to make at least one award under the contract. To the contrary, this Court has previously found that a protestor has standing to bring a protest even where the government has no obligation to make an award. *See Squire Sols.*, 156 Fed. Cl. at 265 (finding that plaintiff had standing to file a bid protest where "the Navy had funding for up to five awards, although it had no obligation to fund any proposals").

**B.          The Government's RCFC 12(b)(6) Argument**

The government argues that IXI's allegation—that the government's stated reason for cancelling the solicitation was pretextual—was not sufficiently pled as a claim of bad faith and therefore should be dismissed under RCFC 12(b)(6). [ECF 49] at 33. In the government's view, IXI simply fails to provide adequate evidentiary support for its bad faith claim. *Id.* at 34.

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678; *see also Twombly*, 550 U.S. at 555 (requiring a pleading to offer "more than labels and conclusions"). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, a plaintiff must plead sufficient factual matter to "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. To assert a claim of bad faith, a bidder must overcome the presumption of good faith attributed to the government with proof that is "almost irrefragable." *Info. Tech.*, 316 F.3d at 1323 n.2. "Almost irrefragable proof amounts to clear and convincing evidence." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (quotation marks omitted). Further, "[i]n the cases where the court has considered allegations of bad faith, the necessary irrefragable proof has been equated with evidence of some specific intent to injure the plaintiff." *Id.* (quotation marks omitted).

Despite claiming that the Navy's actions were improper, IXI does not allege that the Navy intended to injure it through its cancellation of the solicitation. In fact, IXI explicitly stated that it is not alleging that the Navy acted in bad faith. *See* [ECF 50] at 29 ("First, as the Government, itself, admits, "IXI did not make any specific allegations of bad faith in its second amended complaint."); *id.* at 30 ("[A]n allegation that the Government cancelled a solicitation to

avoid litigation is an allegation concerning unlawful conduct, not an allegation of bad faith."). Instead, IXI alleges that the Navy cancelled the solicitation to avoid litigation after IXI filed its first amended complaint and motion for judgment on the administrative record, which identified significant proposal evaluation errors, and that the Navy's cancellation decision was arbitrary and not supported by the record. [ECF 24] ¶¶ 135-39. While the distinction is subtle, there is a difference between claiming on the one hand that the government's stated reason for cancelling the solicitation was pretextual and that the government was motivated by bad faith and a desire to injure the plaintiff and claiming—as IXI does here—that there was no rational basis for the government's decision to cancel the solicitation and that the government was instead motivated by a desire to avoid litigation. *See* [ECF 24] ¶ 24 ("[I]t appears that the Government has arbitrarily, capriciously, and improperly decided to cancel this procurement to avoid the Court's oversight and accountability and to avoid IXI being a 'prevailing party' for purposes of recovering its bid and proposal costs and attorneys' fees.").

If the Court were to accept the government's reasoning, any time a protestor challenges the government's proffered explanation for a decision, it would be required to satisfy the higher pleading standard required for a claim of bad faith. No such requirement exists. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) ("[T]he 1996 amendments to the Tucker Act require that we apply the [Administrative Procedures Act ("APA")] standard of review which is not limited to fraud or bad faith by the contracting officer. The traditional APA standard . . . allows for review of [whether] there has been a violation of a statute or regulation [by the agency], or alternatively, if the agency determination lacked a rational basis."); *see also Magnum Opus Techs., Inc.*, 94 Fed. Cl. at 526 ("To state a claim upon which relief can be granted, it is sufficient for plaintiffs [in a bid protest] to allege that the [agency] violated [a section of the Federal Acquisition Regulation]; they are not obligated to allege bad faith."). In sum, IXI does not allege that the Navy acted in bad faith. Rather, IXI challenges the timing of the Navy's cancellation decision, its proffered rationale for the decision, and the paucity of supporting documentation. Therefore, IXI has sufficiently stated a claim challenging the Navy's cancellation decision, and the Court must now determine whether the Navy's decision to cancel the solicitation was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Tolliver Grp., Inc.*, 151 Fed. Cl. at 86; *MORI Assoc.*, 102 Fed. Cl. at 522-24. The government's motion to dismiss for failure to state a claim is denied.

## IV.   THE PARTIES' CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

The parties cross-move for judgment on the administrative record. *See* [ECFs 50, 56]. IXI argues that the Navy's cancellation of the solicitation "was arbitrary, capricious, unsupported, and in violation of applicable procurement laws and regulations[.]" *See* [ECF 50] at 39.[9] IXI

---

[9] As noted above, in its second amended complaint, IXI also argues that the Navy's evaluation of proposals and selection decision were arbitrary, capricious, and contrary to law. However, because the Court concludes that the Navy's cancellation of the solicitation was proper, it need not reach IXI's other claims. *See Inverness Techs., Inc. v. United States*, 141 Fed. Cl. 243, 253 (2019) ("having concluded that cancellation of the solicitation was not improper, the court has no occasion to reach the plaintiffs' arguments that the agency should have taken additional or different steps in evaluating the proposals—the proper cancellation essentially mooted those claims") (quoting *DCMS-ISA, Inc. v. United States*, 84 Fed. Cl. 501, 517 (2008)).

contends that the Navy only cancelled the solicitation to avoid liability after IXI complained of errors in the Navy's evaluation of various proposals and noted that certain documents were missing from the administrative record. *See id.* at 31-32. The government counters that "[t]he Navy cancelled the solicitation . . . because it no longer needed the research sought in Topic N21A-T018," and that its "conclusion was reasonable, supported by the administrative record, and in accordance with law and reflects no abuse of discretion." [ECF 56] at 31.

The Court reviews agency decisions in bid protests using the standard of review set forth in the APA. 28 U.S.C. § 1491(b)(4); *Impresa*, 238 F.3d at 1332. This standard permits a court to set aside an agency's contracting decision if the protestor shows it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). "Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency[ ] but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts." *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 559 (2012) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The protestor has the burden to show by a preponderance of evidence the arbitrary and capricious nature of the agency's decision. *Mortg. Contracting Servs., LLC v. United States*, 153 Fed. Cl. 89, 124 (2021). While the APA standard calls for considerable deference to the agency, *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000), a court may set aside an agency's procurement decision if the decision lacked a rational basis, or the procurement procedure involved a violation of regulation or procedure. *Impresa*, 238 F.3d at 1332; *see also Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1343 (Fed. Cir. 2021). Nevertheless, if the reviewing court finds that the agency's action evinced rational reasoning and consideration of relevant factors, it must sustain the agency's action. *Advanced Data Concepts*, 216 F.3d at 1058 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974)).

IXI contends that "'the *Government is not entitled to avoid liability* by merely cancelling a solicitation flawed inherently or in its execution.'" [ECF 50] at 31 (quoting *CCL Serv. Corp.* v. United States, 43 Fed. Cl. 680, 690 (1999)) (emphasis added by IXI). It argues that an "'agency should not be permitted to conduct a procurement, inducing would-be contractors to expend time and money preparing and submitting proposals, only to have the rug pulled out from underneath them when an offeror points out putative flaws in the agency's process.'" *Id.* (quoting *Tolliver*, 151 Fed. Cl. at 120). In IXI's view, "the sudden change in position by the Navy ***immediately after*** IXI exposed a fatal flaw in the agency's evaluation leads to only one logical conclusion: that the Navy cancelled this procurement to end this litigation." *Id.* at 32 (emphasis in original). The essence of IXI's claim, therefore, is that the timing of the Navy's cancellation decision is inherently suspect.

The fact that IXI was informed that the solicitation had been cancelled five days after IXI filed its first amended complaint does not, in and of itself, satisfy IXI's burden of demonstrating by a preponderance of the evidence that the agency's decision was arbitrary and capricious. Rather, IXI must demonstrate that the Navy's decision to cancel the solicitation lacked a rational basis, which it has not done in this case. The record demonstrates that the Navy had a rational basis for cancelling the topic after having determined that it did not need to continue pursuing the

SAA radar technology. *See Yang Enters., Inc. v. United States*, 156 Fed. Cl. 435, 439 (2021) ("Though the rationale behind cancellation lacks limpidity and has thereby produced understandable frustration, the Court agrees that the agency has met its minimal burden."); *Cygnus Corp., Inc. v. United States*, 72 Fed. Cl. 380, 385 (2006); *Shields Enters., Inc. v. United States*, 28 Fed. Cl. 615, 636 (1993) (stating that an agency's decision to cancel a solicitation is "inherently discretionary").

As noted above, in June 2020, PMA-262 was working to develop SAA radar technology to help the MQ-4C Triton drone avoid aircraft collisions. AR-C 27-29, 31. In furtherance of this effort, the Program Officer generated Topic N21A-T018, "Airborne Radar-Based Detection and Discrimination of Small Unmanned Aerial Systems and Birds for Collision Avoidance and Force Protection." AR-C 32. Several months later, in December 2020, the Navy issued a BAA seeking proposals under the topic. AR 266-67. After the Navy issued the BAA, PMA-262 held various briefings on the Triton drone program. AR-C 1-26.[10] PMA-262 held briefings on January 19, 2021, March 10, 2021, March 24, 2021, and May 27, 2021. *Id.* The briefing materials indicate that PMA-262 and other stakeholders in the Triton drone program compared SAA radar and Commercial Off the Shelf ("COTS") radar technology. AR-C 4-5, 22, 25. In April 2021, it appears that PMA-262 decided to stop pursuing the SAA radar technology due to funding issues. *See* AR-C 28.

Despite the PMA-262's decision to stop pursuing the SAA radar technology, on April 7, 2021, the Navy proceeded with the BAA, selecting […]'s and […]'s proposals for award. AR 1236. It was not until IXI filed its initial complaint protesting the Navy's proposal evaluation and selection decision that the CO was prompted to review the BAA. AR-C 30. It was at this point that the CO recommended in a memorandum to file dated July 15, 2021, "that corrective action be taken to review the solicitation, reexamine the technology, and take any action deemed appropriate by the agency, which may include a re-evaluation of the proposals or cancellation of the STTR Topic." *Id*. In her memorandum recommending correction action, she also explained that the agency was "exploring pertinent updates in technology and [was] awaiting documentation from the ONR STTR Program Office regarding possible updates to the subject STTR Topic." *Id*. As she explained in another memorandum to file dated July 21, 2021, it was only upon taking corrective action in response to IXI's protest that she discovered through the Program Officer that PMA-262—the topic's primary sponsor—had previously cancelled development of the SAA radar technology, determining it was not necessary because the current technology was adequate to meet the Navy's needs. *See* AR-C 32.

The CO's decision to cancel the solicitation, while perhaps a costly one for the offerors because of its timing, was not arbitrary. Rather, her conclusion that the "development of a new radar system was deemed unnecessary due to the diminished perceived threat and the ability of existing systems to provide a safe operating environment" is rational and supported by the record. AR-C 31; *see RN Expertise, Inc. v. United States*, 97 Fed. Cl. 460, 467-68 (2011) (holding "that the Navy's decision to cancel the solicitation . . . was rational because the Navy had a reasonable expectation of cost savings."); *FFTF Restoration Co., LLC v. United States*, 86 Fed. Cl. 226, 249 (2009) (holding that because the administrative record demonstrated that there

---

[10] This section of the administrative record contains what appears to be copies of slides prepared by the Navy for use in its briefings.

was an unanticipated delay in the completion of a necessary environmental impact statement and a significant reduction in the Department of Energy's budget, the government had a rational basis for cancelling the solicitation). The Court will not second guess the CO's rationale for the cancellation decision, despite that the timing of the decision may—as it does in this case—reasonably raise skepticism. *See Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 32-34 (2022). Instead, the Court must assume that the Navy acted in good faith when executing its procurement functions and that its decision to cancel the BAA, while apparently triggered by IXI's protest, was properly made based on the Navy's programmatic objectives and requirements. *See Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1335 (Fed. Cir. 2004); *see also Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 129 (2010).

## V.    CONCLUSION

For the reasons explained above, the government's motions to dismiss pursuant to RCFC 12(b)(1) and RCFC 12(b)(6) [ECF 49] are **DENIED**, the government's cross-motion for judgment on the administrative record [ECF 56] is **GRANTED**, and IXI's motion for judgment on the administrative record [ECF 50] is **DENIED**. Further, the Court **FINDS AS MOOT** the government's motion to strike [ECF 51].[11] The Clerk is **DIRECTED** to enter judgment accordingly.

IXI requests that the Court enter a permanent injunction enjoining the Navy from cancelling the procurement and proceeding with the awards unless and until the Navy re-evaluates proposals and makes new awards. [ECF 24] at 61. When deciding if a permanent injunction is warranted, the Court considers whether: "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). Achieving success on the merits "is a necessary element for a permanent injunction." *Dell Fed. Sys. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018). In this case, IXI has not succeeded on the merits, so IXI is not entitled to a permanent injunction.

---

[11] Shortly after IXI filed its cross-motion for judgment on the administrative record, the government moved under RCFC 12(f) to strike certain extra-record materials referenced by IXI. Def.'s Mot. to Strike Extra-Record Material in Pl.'s Mot. for Judgment Upon the Admin. R. & Compls. [ECF 51]. Alternatively, the government requested that the Court disregard these materials. *Id.* The role of this Court in reviewing an agency decision is to "apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (citation omitted). Judicial review of an agency decision "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Because the extra-record materials referenced by IXI were not needed for the Court to perform judicial review, the Court disregarded the materials when it considered the merits of IXI's and the government's respective motions for judgment on the administrative record.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order entered on June 24, 2021, [ECF 9]. Accordingly, the Opinion and Order is filed **UNDER SEAL**. The parties **SHALL CONFER AND FILE, on or before February 27, 2023**, a joint status report that (i) identifies the information, if any, that the parties contend should be redacted, (ii) explains the basis for each proposed redaction, and (iii) includes an attachment of the proposed redactions for this Opinion and Order.

s/ Thompson M. Dietz
Thompson M. Dietz, Judge

-18-